FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

02 SEP 30 PM 1:32

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CYNTHIA ALLEN, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Civil Action No. CV-00-B-3178-NW |
| | } | |
| RENAISSANCE REALTY, INC., | } | |
| LANGSTAFF REALTY, INC., | } | |
| NEESE REAL ESTATE, INC., | } | |
| CENTURY 21 CLEMENT | } | |
| REALTY, INC., | } | **ENTERED** |
| | } | |
| Defendants. | } | SEP 30 2002 |

## MEMORANDUM OPINION[1]

Currently before the court is a Motion for Judgment on the Pleadings or in the Alternative, for Summary Judgment filed by defendant Renaissance Realty, Inc. ("defendant" or "Renaissance"). Also before the court is a Motion to Strike the Affidavit of Charlotte S. Dean and a Motion to Strike the Affidavit of Sandra Johnson filed by defendant. Plaintiff Cynthia Allen ("plaintiff" or "Allen"), an African-American and licensed realtor, claims that Renaissance refused to hire her as a real estate salesperson because of her race, in violation of 42 U.S.C. § 1981. Upon

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendants' counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

101

1981. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motion for judgment on the pleadings is due to be denied, but defendant's motion for summary judgment is due to be granted. Defendant's motion to strike the affidavit of Charlotte S. Dean is due to be granted, and defendant's motion to strike the affidavit of Sandra Johnson is also due to be granted.

## I. FACTUAL SUMMARY[2]

Renaissance, a real estate company, has its offices in a building located at South Court Street, Florence, Alabama. (LaDonna Mansell Dep. at 7, 22, DX 4.)[3] Renaissance owned the Court Street building. (Mansell Aff., DX 1.) In March 1999, the Renaissance stockholders were LaDonna Mansell, Joy Long, Vicky Phillips, and Heidi Call. (Mansell Dep. at 8.) The President of Renaissance Realty was Mansell. (Mansell Dep. at 10.)

From January 1999 through November 1999 Renaissance was not hiring individuals as new real estate salespersons. Thus, in January 1999, when Baxter Graves, a white person, asked to come to work at Renaissance, Mansell told him that Renaissance was not hiring. (Mansell Aff.) Similarly, in June 1999 Larry Green, also white, talked with three Renaissance owners concerning a job, but was not hired. (*Id.*) Mansell explained that because Renaissance leased a portion of its building to another company and the remainder of the building was fully occupied by current Renaissance staff, there was no available space to take on an additional salesperson, even if the

---

[2] Although some statements of fact are disputed, the evidence is cited in the light most favorable to plaintiff, the non-moving party, and all reasonable inferences from admissible evidence are drawn in favor of plaintiff. *See e.g., Patrick v. Floyd Med. Ctr.,* 201 F.3d 1313, 1315 (11th Cir. 2000).

[3] Hereinafter, references to Renaissance's Evidence In Support of Summary Judgment are indicated by "DX" followed by the corresponding tab number. References to plaintiff's evidence are indicated by "PX" followed by the corresponding tab number.

company wanted to do so. (Mansell Aff.; Joy Long Aff., DX 2; Vicky Phillips Aff., DX 3.) Therefore, in March 1999, when Allen spoke with Mansell about a job, Renaissance was not hiring any new sales associates. (*Id.*)

In March 1999, Allen visited Renaissance's offices. (Mansell Dep. at 22-24.) Allen had not made an appointment with Mansell or otherwise informed her that she was coming by the office that day. (Pl.'s Resp. to Def. Renaissance's Request for Admissions to Pl. ("Pl.'s Resp. to Req. for Adm.") ¶ 9, DX 6; Mansell Aff.) When Mansell walked out of her adjacent office and said hello, Allen told Mansell that she would like to work at Renaissance. (Mansell Dep. at 22-24.) Allen did not provide a resume or any other information describing her employment history or experience in selling real estate. (Pl.'s Resp. to Req. for Adm. ¶ 10; Mansell Aff.) Mansell told Allen that Renaissance was not hiring anyone at that time. (Mansell Dep. at 24, 27; Mansell Aff.) The entire conversation lasted no longer than a couple of minutes. (Mansell Dep. at 24.) After the March 1999 conversation, Allen never again contacted Mansell about a job and never contacted the other stockholders, Long and Phillips, about a job. (Mansell Dep. at 55; Mansell Aff.; Long Aff.; Phillips Aff.)

In December 1999, more office space in the building became available to Renaissance because the building's other tenant did not renew its lease. (Mansell Aff.; Long Aff.; Phillips Aff.; Mansell Dep. at 57.) During that month, Renaissance associated Linda Mitchell. (*Id.*) Mitchell was the first person newly associated with Renaissance since June 24, 1998. (Mansell Aff.; Pl.'s Resp. to Req. for Adm. ¶ 7.) According to Mansell, when Renaissance made its December 1999 employment decision, she did not believe that Allen was still interested in working at Renaissance, because Allen did not communicate her desire to work with Renaissance after her conversation

3

with Mansell in March 1999, and Allen had affiliated with another company. (Mansell Dep. at 55 - 57.)

In making its December 1999 hiring decision, Renaissance followed its longstanding policy and practice of only considering as minimally qualified persons who were "million dollar producers," (persons who had sold at least $1 million of real estate in a calendar year). (Mansell Aff.; Long Aff.; Phillips Aff.; Mansell Dep. at 28 - 29.) Allen admits that she was not a million dollar producer. (Pl.'s Resp. to Req. for Adm. ¶ 1).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; see Fed. R. Civ. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. A

dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Allen brings this action pursuant to 42 U.S.C. § 1981. She alleges that defendant refused to transfer her real estate license and, after its refusal, allowed a non-minority salesperson to transfer to its operation. (Compl. ¶ 12.) Section 1981 as amended by the Civil Rights Act of 1991 guarantees to all persons in the United States "the same right . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1981 liability must be founded on purposeful discrimination. *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999) (citing *General Bldg. Contractors Ass'n v. Penn.*, 458 U.S. 375, 389 (1982)). Although the statutory language and remedies of 42 U.S.C. § 1981 are distinct from Title VII, the allocation of the burdens of proof and the analysis for determining whether a defendant employer unlawfully discriminated against an employee are the same. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). *See also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Allen can prove her § 1981 claim through the introduction of direct or circumstantial evidence. In this case there is no direct evidence of discrimination. Therefore, the court's analysis is governed by the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Standard*, 161 F.3d at 1330; *Turnes*, 36 F.3d at 1060. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives, in this case, race discrimination. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

A. **Prima Facie Case**

To establish the prima facie case, Allen must establish that she "applied and was qualified for a job for which [Renaissance] was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802. This requires that Allen apply for a job with defendant and that she be qualified for that job. Necessarily, this also means that there be a job for which defendant is seeking applicants:

> Requiring a plaintiff to demonstrate that he or she unsuccessfully applied for a job necessarily implies that the plaintiff must demonstrate that there was a job available for which the employer was seeking applications. This is somewhat different, however, from the fourth requirement imposed on a plaintiff in a *McDonnell Douglas* case to establish that after the plaintiff was rejected, the position remained open and the employer continued to seek applicants, or the position was filled by a member of an unprotected class.

*Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1239 n.19 (11th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). *See also Jones v. Lumberjack Meats*, Inc., 680 F.2d 98, 101 (11th Cir. 1982) (finding no prima facie case because EEOC claimant could not show an open position within 180 days preceding his filing); *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1541 (11th Cir. 1988) (failing to prove job openings was fatal to plaintiff's claim for relief); *Marshall v. Airpax Elec., Inc.*, 595 F.2d 1043, 1044 (5th Cir. 1979) (finding that plaintiff not entitled to relief absent proof of job vacancy at the time plaintiff applied).

To establish a prima facie case, Allen must also demonstrate that she "was *qualified* for a job for which the employer was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802 (emphasis added.); *Grooms v. Wiregrass Elec. Co-Op., Inc.*, 883 F. Supp. 643 (M.D. Ala. 1995) (finding that although plaintiff was within protected group, he was not qualified for job). Renaissance had a policy and practice of only associating "million dollar producers" as new salespersons. (Mansell Aff.; Long Aff.; Phillips Aff.; Mansell Dep. at 28-29.) To be minimally qualified to work as a salesperson for Renaissance, an individual had to sell $1 million worth of real estate within a single calendar year. (*Id.*) Before considering an individual for a salesperson position, Mansell would confirm through the Muscle Shoals Area Board of Realtors annual production awards lists or computerized sales production database that the applicant had sold at least $1 million worth of property during a previous calendar year. (Mansell Dep. at 31-54.) Allen does not dispute that she has never sold $1 million of property in a single calendar year. (Pl.'s

7

Resp. to Req. for Adm. ¶ 7.) Because Allen does not meet the minimum qualifications for becoming a Renaissance real estate salesperson, she cannot establish a prima facie case of discrimination. *See Ferguson v. Veterans Admin.*, 723 F. 2d 871, 873 (11th Cir.) (finding that plaintiff failed to establish prima facie case of hiring discrimination when she did not meet educational qualifications for librarian position). As such, her claim is due to be denied.

Even assuming Allen was qualified, she must also prove that she "*applied . . .* for a job for which the employer was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802 (emphasis added). The parties do not dispute the extent of Allen's communication regarding employment with Renaissance. In March 1999, when Renaissance was not hiring, Allen visited the Renaissance offices and told Mansell that she would like to work there. (Mansell Dep. at 22-24.) She did not provide any information about her qualifications. (Pl.'s Resp. to Req. for Adm. ¶ 10.) Mansell told Allen that Renaissance was not hiring any agents at that time. (Mansell Dep. at 22-24.) After their brief conversation, (Mansell Dep. at 24), Allen did not again contact Renaissance about a job, (Mansell Dep. at 55; Mansell Aff.; Long Aff.; Vicky Phillips Dep. at 1, attached as DX Ex. 3; Pl.'s Resp. to Req. for Adm.¶ 11.) Thus, in December 1999, when Renaissance acquired more office space and decided to bring on a new salesperson, Mansell did not believe Allen was still interested in working at Renaissance because she had affiliated with another company and because she did not contact Mansell after their brief conversation in March 1999. (Mansell Dep. at 55-57.) These facts simply do not support a finding that plaintiff actually "applied" for a position. Furthermore, if the submission of a written application does not burden an employer with a duty to contact the applicant each time a position becomes available for an unlimited period of time, *McGowan v. General Dynamics Corp.*, 794 F.2d 361, 364 (8th Cir. 1986) and *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 630 (6th Cir.), then the facts in this

8

case certainly did not create such a burden on Renaissance. Therefore, Allen has failed to establish that she applied and was minimally qualified for an available position with Renaissance Realty.

**B.      Pretext**

Even assuming Allen had established a prima facie case, she has not presented sufficient evidence that Renaissance's proffered reason for not hiring her are pretext for race discrimination. Renaissance articulated that it was not seeking applicants at the time of Allen's interest because it had no available position.[4] The court finds that plaintiff has presented no evidence to create a question of fact in the mind of a reasonable juror that defendant's articulated reason for not hiring plaintiff is pretext for race discrimination. That Renaissance hired a white person nine months after Allen told Mansell she wanted to associate with Renaissance is not sufficient evidence from which a reasonable jury could infer discriminatory intent.

Allen expresses concern that Renaissance made no attempt to find out whether Allen was still interested in the position or whether she was qualified before Renaissance hired Mitchell. However, Renaissance had no obligation to seek out Allen after nine months of no contact, determine her qualifications, and ask her whether she was still interested in associating with Renaissance before it hired a new salesperson in December 1999. *McGowan v. General Dynamics Corp.*, 794 F.2d 361, 364 (8th Cir. 1986); *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 630 (6th Cir. 1987). This is especially true given the passage of nine months since Allen told Renaissance

---

[4] Allen contends that Renaissance has proffered conflicting reasons for not employing her - that Renaissance was not hiring and that Allen was not a million-dollar producer - and that this is evidence that Renaissance's reasons are pretextual. The court disagrees. Renaissance articulated that it did not hire Allen because at the time she communicated to the company that she wanted to be associated with it, Renaissance was not hiring. Renaissance argued that plaintiff could not establish a prima facie case because she was not a million-dollar producer and, therefore, was not qualified to work as salesperson for Renaissance.

9

she wanted to become a salesperson for the company, the fact that Allen did not follow up with Renaissance after her initial communication, the fact that Allen went to work elsewhere, and the fact that Allen was not a million dollar producer.[5]

Defendant's motion for summary is due to be granted.

**Motions to Strike**

Defendant moves to strike Affidavit of Charlotte S. Dean. The so-called "Affidavit" is actually a letter from Ms. Dean, dated February 20, 2002, not made under oath, and addressed "to whom it may concern." The gist of Ms. Dean's statement is that Ms. Dean and other, unidentified members of the Muscle Shoals Area Board of Realtors, did not like the Board's practice of awarding membership in the "Million Dollar Club" because they perceived that some of the brokers made false reports for self-serving reasons. Defendant's Motion to Strike the "Affidavit"/letter of Ms. Dean is due to be granted. Even if Ms. Dean's perception of wide-spread dishonesty in reporting production data was admissible, all this would mean is that some individuals may have had a reason to disagree with the wisdom of some real estate companies (including Renaissance) having as a minimum qualification for new associates (salespersons) that they have sold in at least one calendar year a million dollar's worth of real estate.

Regardless of Ms. Dean's or Ms. Allen's opinions about how sound or valid the Muscle Shoals Area Board of Realtors million dollar producer club program was, those opinions do not

---

[5]In her materials opposing summary judgment (in favor of Renaissance and other named defendants), Ms. Allen seems to place great reliance upon the fact that she is licensed by the State of Alabama to sell real estate. In this regard, Ms. Allen may be questioning the reasonableness or entitlement of Renaissance or *any* real estate company to implement minimum job qualifications requiring knowledge or experience beyond a mere state-issued license. As noted above, it is the prerogative of the potential *employer*, not the potential *employee*, to decide what the minimum requirements for a position of employment are to be (so long as those reasons are not racially motivated).

authorize a court to decide what Renaissance's minimum requirement for new associates can and cannot be. *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 n.19 (11th Cir. 2000) (*en banc*) (stating that court's role should not include reexamining business judgment of employer where proffered reasons for decision are not discriminatory); *Combs*, 106 F.3d at 1543 ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer.").

Defendant also moves to strike the "Affidavit" of Sandra Johnson. Ms. Allen submitted a letter from Ms. Sandra Johnson, in which Ms. Johnson expresses her belief that "the majority of brokers are looking for as many salespeople as they can accommodate in their offices...." Renaissance has moved to strike the Johnson letter for various reasons, one of which is that the letter is not a statement made under oath. Renaissance also argues that the letter fails to show affirmatively that Ms. Johnson is competent (possesses personal knowledge) to testify to the matters stated in the second paragraph of the letter. Specifically, Ms. Johnson purports to express her opinion as to the "wants" of "the majority of brokers," what they "are looking for," and what "some" unidentified portion of the brokers "would like to have." Defendant's Motion to Strike the "Affidavit" of Ms. Johnson is due to be granted.

Assuming that the Affidavit was admissible, it nevertheless does not create a disputed question of fact. What the "majority of brokers are looking for" does not, of course, tend to disprove Renaissance's evidence that it was not seeking new associates, and did not have adequate office space for new associates, as of March 1999. In fact, Ms. Johnson states that a majority of brokers are looking for as many salespeople "as they can accommodate in their offices...." The evidence is without dispute that in March 1999 Renaissance could not accommodate another

11

brokers are looking for as many salespeople "as they can accommodate in their offices...." The evidence is without dispute that in March 1999 Renaissance could not accommodate another salesperson. Moreover, as mentioned above, even if a majority of brokers were shown to be opposed to having a million-dollar-producer requirement, that showing would still not entitle the court to second-guess the wisdom of Renaissance's own decision for purposes of ruling upon the pending summary judgment motion.[6]

## IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Judgment on the Pleadings is due to be denied and its Motion for Summary Judgment is due to be granted. Defendant's motions to strike the affidavits of Charlotte S. Dean and Sandra Johnson are due to be granted. An Order in accordance with this opinion will be entered contemporaneously with this Memorandum Opinion.

DONE this 30th day of September, 2002.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge

---

[6] Ms. Allen has also filed an Affidavit of Jim Bonner. The Bonner affidavit does not appear to be directed at Renaissance. If it is, then at most all it indicates is Mr. Bonner's opinion that as of some time in 1999 he "knew that Cynthia Allen had been an excellent producer in the past." *Affidavit of Jim Bonner*, at p. 1. This testimony does not prove that Ms. Allen was minimally qualified for association with Renaissance.