FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

02 SEP 30 PM 1:32

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CYNTHIA ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. CV-00-B-3178-NW |
| | ) |
| RENAISSANCE REALTY, INC., | ) |
| LANGSTAFF REALTY, INC., | ) |
| NEESE REAL ESTATE, INC., | ) |
| CENTURY 21 CLEMENT | ) |
| REALTY, INC., | ) |
| | ) |
| Defendants. | ) |

ENTERED
SEP 30 2002

**MEMORANDUM OPINION**[1]

Currently before the court is a Motion for Summary Judgment filed by Defendant Langstaff Realty, Inc. ("defendant" or "Langstaff Realty"). Plaintiff Cynthia Allen ("plaintiff" or "Allen"), an African-American and licensed realtor, claims that Langstaff Realty refused to hire her as a real estate salesperson because of her race, in violation of 42 U.S.C. § 1981. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendants' counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

107

relevant law, the court is of the opinion that defendant's motion for summary judgment is due to be granted.

## I. FACTUAL SUMMARY[2]

From 1991 - 1999, Allen was affiliated with Coldwell Banker Ronald Warren Real Estate, Inc. ("Coldwell Banker") as a real estate salesperson. (Allen Dep. at 38-39.) Allen had obtained from the State of Alabama, a real estate license that authorized her to represent individuals who wished to purchase or sell real estate. (Allen Dep. at 33.) Although Allen had been affiliated with Coldwell Banker for several years, she had concluded that the company did not respect her, and in March 1999, she decided to affiliate with another company. (Allen Dep. at 40, 60, 93-94.)   To become affiliated with another company, Allen first needed to find one that would agree to accept the transfer of her real estate license. (Allen Dep. at 60.) She made inquiries of several real estate companies located in Florence and Muscle Shoals, Alabama, including Langstaff Realty. (Allen Dep. at 58-59.)

In March 1999, within five to seven days of notifying Coldwell Banker that she was leaving the company, Allen telephoned Quint Langstaff,[3] president and qualifying broker at Langstaff Realty. (Allen Dep. at 60-62, 64-65; Langstaff Dep. at 7, 14-15.) During this conversation, Allen explained her situation and requested that Langstaff Realty accept the transfer of her license. (Allen Dep. at 79.) Quint Langstaff was struck by the sense of urgency in

---

[2]Although some statements of fact are disputed, the evidence is cited in the light most favorable to plaintiff, the non-moving party, and all reasonable inferences from admissible evidence are drawn in favor of plaintiff. *See e.g., Patrick v. Floyd Med. Ctr.,* 201 F.3d 1313, 1315 (11th Cir. 2000).

[3]Quint Langstaff will be referred to throughout this opinion by his first and last name to avoid confusion with defendant Langstaff Realty, Inc.

2

Allen's voice and understood that Allen wanted to transfer her real estate license immediately. (Allen Dep. at 80; Langstaff Dep. at 31-32.) Quint Langstaff responded by saying he was uncertain as to the future of the company and told Allen that he would need to discuss the matter with his three sales associates, Margaret Taylor, Chris Gaskell, and Anne Bernauer. (Allen Dep. at 79-81; Langstaff Dep. at 28-30.) Quint Langstaff closed the conversation by inviting Allen to call back after he had the opportunity to confer with his sales associates. (Allen Dep. at 81; Langstaff Dep. at 28-30.)

Shortly after Allen's initial conversation with Quint Langstaff in March 1999, the Century 21 Clement Realty franchise in Russellville, Alabama ("Century 21 Russellville") agreed to accept the transfer of Allen's real estate license. (Allen Dep. at 125.) Less than one week later, Allen called Quint Langstaff. (Langstaff Dep. at 57.) Allen recorded this conversation and produced a copy of the audio tape recording, as well as a transcript, during discovery. (Allen Dep. at 154; Pl.'s Ex. B at 101-04.) During that conversation, Quint Langstaff informed Allen that Langstaff Realty had "decided, I think, that we are just going to stay -- The rest of us have kind of been talking and we will probably stay the size we are." (Pl.'s Ex. B at 101-04.) Allen responded by asking, "Can I get back with you? Do you think you will be taking on any more agents?" (*Id.*) Quint Langstaff replied, "Cynthia, I don't know. I'll be glad to call you if we do, though, to talk to you about it." (*Id.*) Following this conversation, Allen did not contact Quint Langstaff again regarding any interest in affiliating with Langstaff Realty. (Langstaff Dep. at 73.) Allen has no personal knowledge to suggest that Langstaff Realty's decision not to accept her requested license transfer was motivated by racially discriminatory reasons. (Allen Dep. at 169-70.)

3

Quint Langstaff testified that during the second conversation, he continued to understand Allen's urgent desire to transfer her real estate license immediately. (Langstaff Dep. at 61-62.) In July 1999, after Quint Langstaff's two conversations with Allen in March 1999, Doris Ross and Jerry Ann Pennington joined Langstaff Realty as real estate salespersons. (Langstaff Dep. at 66, 68-70.) According to Quint Langstaff, he did not contact Allen in July 1999 because of the amount of time that had elapsed since their conversations about her desire to transfer her license and due to his belief that in March 1999, Allen was interested in an immediate transfer of her real estate license. (Langstaff Dep. at 69-70.)

Langstaff Realty's circumstances had changed when it made the decision to add Ross and Pennington as salespersons in July 1999. (Langstaff Dep. at 66, 68-70, 74-75.) According to Quint Langstaff, Ross was a close friend of Taylor and Gaskell, two of Langstaff Realty's three sales associates. In July1999, Taylor and Gaskell informed Quint Langstaff that Ross was having health and financial difficulties. (Langstaff Dep. at 66-67, 74-75.) Because of their close friendship with Ross, Taylor and Gaskell believed Ross would be benefitted by working with them. (Langstaff Dep. at 74-75.) Taylor and Gaskell also believed that Ross would be further benefitted if she was joined at Langstaff Realty by her close friend, Pennington. (Langstaff Dep. at 75.) Because of his own friendship with Ross, and as a concession to Taylor and Gaskell, Quint Langstaff agreed to allow Ross and Pennington to transfer their licenses to Langstaff Realty. (Langstaff Dep. at 75.)

Approximately one year after Ross and Pennington became associated with Langstaff Realty, Billy Ray Pennington, Jerry Ann Pennington's husband, joined the company as a real estate sales associate. (Langstaff Dep. at 76.) By that time, however, Taylor and Gaskell had left

the company. (Langstaff Dep. at 76-77.) Quint Langstaff became affiliated with another real estate agency in April 2001, and Langstaff Realty is currently in the process of ending its operations. (Langstaff Dep. at 8.)

On November 8, 2000, Allen filed this action. (Complaint.) She alleges that Langstaff Realty is liable for racial discrimination because it did not accept the transfer of her real estate license. (*Id.*) In her Complaint, Allen also asserted similar claims against three other real estate agencies in Florence and Muscle Shoals. (*Id.*) Langstaff Realty subsequently filed a Motion for Summary Judgment, which is now before the court for its review.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; see Fed. R. Civ. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

Allen brings this action pursuant to 42 U.S.C. § 1981. She alleges that defendant refused to transfer her real estate license and, after its refusal, allowed non-minority salespersons to transfer to its operation. (Compl. ¶ 13.) Section 1981 as amended by the Civil Rights Act of 1991 guarantees to all persons in the United States "the same right . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1981 liability must be founded on purposeful discrimination. *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999) (citing *General Bldg. Contractors Ass'n v. Penn.*, 458 U.S. 375, 389 (1982)). Although the statutory language and remedies of 42 U.S.C. § 1981 are distinct from Title VII, the allocation of the burdens of proof and the analysis for determining whether a defendant employer unlawfully discriminated against an employee are the same. *Turnes v. AmSouth Bank, N.A.*, 36

F.3d 1057, 1060 (11th Cir. 1994). *See also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Allen can prove her § 1981 claim through the introduction of direct or circumstantial evidence. In this case there is no direct evidence of discrimination. Therefore, the court's analysis is governed by the tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Standard*, 161 F.3d at 1330; *Turnes*, 36 F.3d at 1060. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives, in this case, race discrimination. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

A.  **Prima Facie Case**

To establish the prima facie case, Allen must prove that she "applied and was qualified for a job for which [Langstaff Realty] was seeking applicants." *McDonnell Douglas*, 411 U.S. at

802. *See also Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982) (finding no prima facie case of racial discrimination because EEOC claimant could not show an open position within the 180 days preceding his filing); *Hill v. Metro Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1541 (11th Cir. 1988) (finding that plaintiffs who failed to show evidence of job openings were not entitled to relief); *Marshall v. Airpax Elect., Inc.*, 595 F.2d 1043, 1044 (5th Cir. 1979) (finding that prospective employee was not entitled to relief under *McDonnell Douglas* absent evidence of job vacancy at time of application); *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 629 (6th Cir.) (finding that prospective employee who did not submit an application during the time employer was accepting applications failed to establish a prima facie case of discrimination). The court is of the opinion that Allen has failed to establish a prima facie of discrimination.

The record reflects that Allen contacted Langstaff Realty twice in an attempt to effect the transfer of her real estate license. Each contact was a telephone call to Quint Langstaff in which Allen expressed her interest in affiliating with Langstaff Realty. Allen never completed a written application and never submitted any documentation regarding her interest. Nevertheless, it is unnecessary to address Langstaff Realty's argument that Allen never applied for a position, as contemplated by *McDonnell Douglas*, because the evidence is that Langstaff Realty was not seeking applicants at the time of Allen's inquiries in March 1999. Specifically, Quint Langstaff testified that in March 1999, Langstaff Realty was in the midst of a period of transition and was not prepared to bring in additional real estate salespersons at that time. Although Allen disputes this contention and argues that Langstaff Realty's addition of two salespersons in July 1999 shows that Langstaff Realty could have hired her four months earlier, Allen's argument is

without merit. It is undisputed that Langstaff Realty was not "seeking applicants" in March 1999 and evidence that it began doing so several months later is not sufficient to reasonably permit the conclusion that Langstaff Realty had any available positions within a reasonable time of Allen's inquiries. A plaintiff fails to meet her burden of establishing a prima facie case of racial discrimination when she cannot show that a vacancy existed at the time of her application or within a reasonable time thereafter. *See Farmer v. Washington Fed. Sav. & Loan Assoc.*, 488 F. Supp. 55, 57-58 (N.D. Miss. 1979).

Allen also argues that Langstaff Realty's failure to contact her in July 1999, when it allowed Ross and Pennington to transfer their licenses, constitutes evidence sufficient to meet the second prong of the *McDonnell Douglas* test. She contends that because she expressed an interest in affiliating with Langstaff Realty in March 1999 and because Quint Langstaff told her he would call if the company decided to expand, Langstaff Realty had a duty to contact Allen before adding real estate agents in July 1999. Allen has failed, however, to present evidence that Langstaff Realty was aware of her continued interest four months after her conversations with Quint Langstaff. There is no evidence in the record that Allen contacted Langstaff Realty at any time following her second telephone conversation with Quint Langstaff in March 1999. Furthermore, it is undisputed that Allen's inquiries consisted solely of two oral communications.

Submission of an application does not obligate an employer to contact an applicant each time a position becomes available for an unlimited period of time. *McGowan v. Gen. Dynamics Corp.*, 794 F.2d 361, 364 (8th Cir. 1986). Although Allen's burden under *McDonnell Douglas* is not so strict that she is required to prove that a vacancy existed on the precise date of her application, "[t]he longer the period of time between an application and subsequent vacancy, the

9

greater the need to 'follow-up' an application." *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1022 (5th Cir. 1990). The applicant's duty to follow-up with the employer is heightened when the applicant's only inquiries were oral. *Id. See also Farmer*, 488 F. Supp. at 57-58.

The record is devoid of evidence sufficient to allow a fact finder to reasonably conclude that Langstaff Realty was seeking applicants at the time of Allen's inquiries in March 1999, or within a reasonable time thereafter. Therefore, Allen has failed to establish a prima facie case of racial discrimination under the *McDonnell Douglas* framework, and Langstaff Realty is entitled to judgment as a matter of law.

**B.     Pretext**

Even assuming that Allen has established a prima facie case of racial discrimination, Langstaff Realty has presented legitimate, nondiscriminatory explanations for its employment decision. First, Langstaff Realty was not seeking additional agents at the time plaintiff contacted Quint Langstaff. Second, Quint Langstaff stated that when the company decided to add two agents in July 1999, he did not consider Allen because he believed she would have no longer been interested in the position. Quint Langstaff testified that he perceived Allen's March 1999 inquiries to be an effort to secure an immediate transfer of her real estate license. He based this perception on the sense of urgency he heard in Allen's voice during their telephone conversations.

Allen contends that Langstaff Realty's action of allowing Ross and Pennington to transfer their licenses to Langstaff Realty without first contacting Allen is evidence that its decision not to accept the transfer of her license in March 1999 was pretext for race discrimination. However, Allen has not pointed to any record evidence that supports her contention. "A plaintiff may

10

prove pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quoting *Burdine*, 450 U.S. at 256). Because Allen has offered nothing other than a conclusory allegation that defendant's articulated reasons are pretext for race discrimination, she has not offered evidence "sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions," and she has failed to meet her burden under *McDonnell Douglas*. Summary judgment is due to be granted.

## IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted. An order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

DONE this 30th day of September, 2002.

SHARON LOVELACE BLACKBURN
United States District Judge